**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| CENTRAL STATES, SOUTHEAST AND SOUTHWEST AREAS PENSION FUND, and ARTHUR H. BUNTE, JR., trustee, )))) | |
| *Plaintiffs,* ) | Case No. 15-cv-6862 |
| ) | |
| v. ) | Judge |
| ) | Magistrate Judge |
| CRONCO, INC., a Minnesota corporation; and PETER A. RICE, an individual, ))) | |
| ) | |
| *Defendants.* ) | |

**COMPLAINT**

Plaintiffs, Central States, Southeast and Southwest Areas Pension Fund and Arthur H. Bunte, Jr., trustee, allege as follows:

**INTRODUCTION AND PARTIES**

1.      This action arises under the Employee Retirement Income Security Act of 1974 ("ERISA"), as amended by the Multiemployer Pension Plan Amendments Act of 1980 ("MPPAA"), 29 U.S.C. § 1001 *et seq.*, and under the Minnesota Uniform Fraudulent Transfer Act, Minn. St. § 513.41 *et seq.*

2.      This Court has jurisdiction over this action under 29 U.S.C. §§ 1132(e), 1132(f), and 1451(c) and under 28 U.S.C. §§ 1331 and 1367.

3.      Venue lies in this Court under 29 U.S.C. §§ 1132(e)(2) and 1451(d), in that the Central States, Southeast and Southwest Areas Pension Fund (the "Fund") is administered at its principal place of business in Rosemont, Illinois. Venue is also proper in this Court pursuant to the forum selection clause contained in the Fund's Trust Agreement, which designates this Court as the appropriate forum for lawsuits to collect withdrawal liability.

1

4.     The Fund is a multiemployer pension plan within the meaning of 29 U.S.C. §§ 1002(37) and 1301(a)(3).

5.     Plaintiff Arthur H. Bunte, Jr., is a present trustee and fiduciary of the Fund within the meaning of 29 U.S.C. § 1002(21)(A), and he and his fellow trustees are the plan sponsor of the Fund within the meaning of 29 U.S.C. § 1301(a)(10). The Trustees administer the Fund at its offices in Rosemont, Illinois.

6.     Pursuant to 29 U.S.C. §§ 1132(a)(3) and 1451(a)(1), the Trustees, by and through their designated trustee Arthur H. Bunte, Jr., are authorized to bring this action on behalf of the Fund, its participants, and its beneficiaries for the purpose of collecting withdrawal liability.

7.     Defendant Cronco, Inc. ("Cronco") is a corporation organized under the laws of Minnesota.

8.     Defendant Peter A. Rice ("Rice") is a citizen of Minnesota who has at all relevant times been the sole shareholder and chief executive officer of Cronco.

**FACTUAL BACKGROUND**

9.     Non-party Cronstroms Heating and Air Conditioning, Inc. ("Cronstroms") is a corporation organized under the laws of Minnesota.

10.     During all relevant times, Cronstroms was bound by collective bargaining agreements with certain local unions affiliated with the International Brotherhood of Teamsters under which Cronstroms was required to contribute to the Fund on behalf of certain of its employees.

11.     The Fund determined that on or about May 29, 2010, Cronstroms permanently ceased to have an obligation to contribute to the Fund and/or permanently ceased all covered

operations, thereby effecting a "complete withdrawal" from the Fund within the meaning of 29 U.S.C. § 1383.

12.     As a result of this complete withdrawal, Cronstroms incurred withdrawal liability to the Fund in the principal amount of $164,787.38, as determined under 29 U.S.C. § 1381(b) (the "Withdrawal Liability").

13.     On or about July 20, 2011, Cronstroms, through Rice, received a notice and demand for payment of the Withdrawal Liability that the Fund issued in accordance with 29 U.S.C. §§ 1382(2) and 1399(b)(1) (the "Notice and Demand").

14.     On or about August 18, 2011, Cronstroms, through Rice, received a notice from the Fund pursuant to 29 U.S.C. § 1399(c)(5)(A), which advised Cronstroms that its Withdrawal Liability payments were past due and forewarned Cronstroms of the consequences of failing to pay the Withdrawal Liability, including the possibility that the Fund may file suit to collect the delinquent Withdrawal Liability (the "Past Due Notice").

15.     Cronstroms did not timely initiate arbitration pursuant to 29 U.S.C. § 1401(a)(1). Consequently, the amounts demanded by the Fund became due and owing pursuant to section 29 U.S.C. § 1401(b)(1).

16.     Cronstroms failed to make any Withdrawal Liability payments to the Fund and fell into default within the meaning of 29 U.S.C. § 1399(c)(5).

17.     On November 1, 2011, the Fund filed suit against Cronstroms in the United States District Court for the Northern District of Illinois, Eastern Division, to collect the Withdrawal Liability, *Central States, Southeast and Southwest Areas Pension Fund, et al. v. Cronstroms Heating and Air Conditioning, Inc.*, Case No. 11 C 7758 (the "Lawsuit").

18.     On January 18, 2012, the District Court entered a default judgment against Cronstroms in the Lawsuit in the amount of $202,758.60 (the "Judgment").

19.     To date, Cronstroms has not made any payments to the Fund towards the Withdrawal Liability or the Judgment.

## COUNT I – WITHDRAWAL LIABILITY

20.     Plaintiffs hereby reallege and incorporate each and every allegation made in paragraphs 1 through 19 of this Complaint as though fully set forth herein.

21.     This count is brought against Defendant Cronco.

22.     On or about May 29, 2010, Cronstroms was a wholly owned subsidiary of Cronco.

23.     On or about May 29, 2010, Cronco and Cronstroms were a group of trades or businesses under common control (the "Cronstroms Controlled Group") and therefore constituted a single employer within the meaning of 29 U.S.C. § 1301(b)(1) and the regulations promulgated thereunder.

24.     The Cronstroms Controlled Group is the "employer" for purposes of determining and assessing withdrawal liability under ERISA.

25.     Cronco and Cronstroms, as members of the Cronstroms Controlled Group, are jointly and severally liable to the Fund for the Withdrawal Liability.

**WHEREFORE**, Plaintiffs request the following relief:

(a)     A judgment against Cronco and on behalf of Plaintiffs, pursuant to 29 U.S.C. §§ 1132(g)(2) and 1451(b) for:

(i)     $164,787.38 in withdrawal liability;

(ii)     interest computed and charged at an annualized interest rate equal to two percent (2%) plus the prime interest rate established by JPMorgan Chase Bank, NA for the fifteenth (15th) day of the month for which interest is charged;

(iii)    an amount equal to the greater of interest on the unpaid withdrawal liability or liquidated damages of 20% of the unpaid withdrawal liability; and

(iv)     attorney's fees and costs.

(b)     Post-judgment interest computed and charged on the entire judgment at an annualized interest rate equal to two percent (2%) plus the prime interest rate established by JPMorgan Chase Bank, NA for the fifteenth (15th) day of the month for which interest is charged, compounded annually;

(c)     Such further or different relief as this Court may deem proper and just.

## COUNT II - IMPROPER DISTRIBUTIONS

26.     Plaintiffs hereby reallege and incorporate each and every allegation made in paragraphs 1 through 25 of this Complaint as though fully set forth herein.

27.     This Count is brought against Defendant Rice.

28.     At all relevant times, Rice was the chief executive officer of both Cronco and Cronstroms.

29.     On or about June 1, 2009, Rice sent a letter to the Fund in which he asked for an estimate of the amount of withdrawal liability that Cronstroms would incur in the event it withdrew from the Fund.

30.     On or about June 4, 2009, Rice received an estimate of Cronstroms' withdrawal liability from the Fund.

31.     As noted above, Cronstroms effected a complete withdrawal from the Fund on or about May 29, 2010, and incurred $164,787.38 in Withdrawal Liability.

32.     In November of 2011, Rice caused Cronstroms to make transfers from Cronstroms to himself of certain monies and/or assets, the value of which was at least $40,572.80 (the "Transfers").

33.     Cronstroms received no consideration or insufficient consideration for the Transfers.

34.     The Transfers were made after Rice requested and received an estimate of Cronstroms' withdrawal liability, after Cronstroms incurred the Withdrawal Liability to the Fund, and after Cronstroms, through Rice, received the Notice and Demand, which notified Cronstroms of the Withdrawal Liability.

35.     Further, the Transfers were made after Cronstroms, through Rice, received the Past Due Notice, and after the Fund had actually filed a lawsuit against Cronstroms to collect the Withdrawal Liability.

36.     Cronstroms failed to pay the Fund and other creditors prior to the Transfers.

37.     The Transfers were part of a scheme to make improper shareholder distributions to Rice in preference to him over creditors such as the Fund.

38.     The Transfers were an abuse of Cronstroms' assets and corporate form. In abusing Cronstroms' corporate form in this fashion, Rice is liable to the Fund to the extent of the improper Transfers.

39.     At the time of, or as a result of, the Transfers, Cronstroms was left insolvent and lacked sufficient assets to pay the Withdrawal Liability.

40.     29 U.S.C. §§ 1132(a)(3)(B) and 1451(a) authorize this Court to impose, for the benefit of Plaintiffs, a constructive trust on the funds and assets transferred from Cronstroms to Rice through the Transfers.

**WHEREFORE**, Plaintiffs request the following relief:

(a)     That this Court enter judgment against Rice and on behalf of Plaintiffs for the value of all funds and assets Rice received as a result of the Transfers, pre-judgment interest as allowed by law, and other and future amounts to be proven in this case;

(b)     That this Court impose a constructive trust on all funds and assets transferred from Cronstroms to Rice through the Transfers, on any property purchased using said funds, and on any funds Rice has obtained in exchange for said assets;

(c)     Attorneys' fees and costs; and

(d)     Such further or different relief as this Court may deem proper and just.

## COUNT III - EVADE OR AVOID

41.     Plaintiffs hereby reallege and incorporate each and every allegation made in paragraphs 1 through 40 of this Complaint as though fully set forth herein.

42.     This Count is brought against Defendant Rice.

43.     29 U.S.C. § 1392(c) prohibits a transaction if a principal purpose of the transaction is to evade or avoid withdrawal liability.

44.     As noted, the Transfers were made after Rice requested and received an estimate of Cronstroms' withdrawal liability, after Cronstroms incurred the Withdrawal Liability to the Fund, and after Cronstroms, through Rice, received the Notice and Demand, which notified Cronstroms of the Withdrawal Liability.

45.     Upon information and belief, a principal purpose behind the Transfers was to evade or avoid the payment of the Withdrawal Liability to the Fund.

46.     Under 29 U.S.C. § 1392(c), the Transfers may be disregarded and Rice may be held liable to the Fund for the amount of the Transfers.

**WHEREFORE**, Plaintiffs request the following relief:

(a)     That this Court void and disregard the Transfers;

(b)     That this Court enter judgment against Rice and on behalf of Plaintiffs for the value of all funds and assets Rice received as a result of the Transfers, pre-judgment interest as allowed by law, and other and future amounts to be proven in this case;

(c)     That this Court impose a constructive trust on all funds and assets transferred from Cronstroms to Rice through the Transfers, on any property purchased using said funds, and on any funds Rice has obtained in exchange for said assets;

(d)     Attorneys' fees and costs; and

(e)     Such further or different relief as this Court may deem proper and just.

## COUNT IV – MINNESOTA UNIFORM FRAUDULENT TRANSFER ACT

47.     Plaintiffs hereby reallege and incorporate each and every allegation made in paragraphs 1 through 46 of this Complaint as though fully set forth herein.

48.     This Count is brought against Defendant Rice and is brought pursuant to the Minnesota Uniform Fraudulent Transfer Act, Minn. St. § 513.41 *et seq.*

49.     The Transfers were made and entered into with the intent to hinder, delay, or defraud Cronstroms' creditors, including the Fund.

50.     The Transfers were made to a Cronstroms insider: Rice, Cronstrom's chief executive officer.

51.     In addition, the Transfers occurred shortly after Cronstroms incurred a substantial debt of Withdrawal Liability to the Fund.

52.     Further, the Transfers were made after the Fund had notified Cronstroms, through Rice, that the Fund may file suit to collect the Withdrawal Liability and after the Fund had actually filed that suit.

53.     Moreover, at the time of the Transfers, Cronstroms was insolvent and lacked sufficient assets to pay its creditors, such as the Fund.

54.     At the time of the Transfers, Rice knew or had reasonable cause to believe that Cronstroms was insolvent.

55.     Further, the Transfers were made without Cronstroms receiving reasonably equivalent value and, at the time of the Transfers, Cronstroms believed or reasonably should have believed that it would incur debts beyond its ability to pay as they became due.

56.     The Transfers were fraudulent as to the Fund, who was a creditor of Cronstroms before the Transfers were made.

**WHEREFORE**, Plaintiffs request the following relief pursuant to Minn. St. § 513.47:

(a)     Avoidance of the Transfers to the extent necessary to satisfy Plaintiffs' claim;

(b)     An attachment, levy of execution, or other provisional remedy against all funds and assets transferred from Cronstroms to Rice through the Transfers, against any property purchased with said funds, and against any funds Rice has obtained in exchange for said assets;

(c)     An injunction prohibiting Cronstroms from further transferring any of Cronstroms' assets or funds unless such transfers are ordered by this or another court;

(d)     An injunction prohibiting Rice from transferring any funds or assets Cronstroms transferred to Rice through the Transfers, any property purchased with said funds, and any funds

Rice has obtained in exchange for said assets, unless such transfers are ordered by this or another court; and

     (e)     Such further or different relief as this Court may deem proper and just.

Respectfully submitted,

*/s/ Andrew J. Herink*
Andrew J. Herink (ARDC #06303510)
CENTRAL STATES FUNDS
Law Department
9377 West Higgins Road, 10th Floor
Rosemont, Illinois 60018
(847) 939-2458
aherink@centralstatesfunds.org

August 6, 2015                    ATTORNEY FOR CENTRAL STATES